UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Darren S. Simmons, ) | C/A No.  5:13-644-RMG-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Report and Recommendation |
| William R. Byars, Jr., Dr. Thomas E. ) | |
| Bryne, Dr. John B. McRee, Dr. Moore, ) | |
| Nurse Janine Wresicics, Nurse Terry L ) | |
| Andrews, Nurse P Derrick, Warden John ) | |
| M. Pate, A/W Newton, Major Worrick, ) | |
| Cindy Sanders, and John H. Carmichael, ) | |
| Jr., ) | |
| ) | |
| Defendants. ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), brought this action alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is before the court on Defendants' Motion for Summary Judgment filed on September 9, 2013. ECF No. 127.  As Plaintiff is proceeding pro se, the court entered an order on September 10, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. ECF No. 128.  Plaintiff responded to Defendants' Motion for Summary Judgment on September 18, 2013, and Defendants replied on September 26, 2013. ECF Nos. 131, 133. On May 23, 2014, Plaintiff moved to voluntarily dismiss certain Defendants from the case, ECF No. 163, and Defendants consented to the Motion, ECF No. 164. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e) (D.S.C).  Because these motions are dispositive, a Report and Recommendation is entered for the court's review.

I.   Factual Background

During the time period relevant to his Complaint, Plaintiff was incarcerated at Allendale Correctional Institution ("ACI"). ECF No. 1 at 2. Plaintiff filed his initial Complaint on March 11, 2013. *Id.* He submitted an Amended Complaint on March 21, 2013, and later filed a Second Amended Complaint on April 8, 2013. ECF Nos. 7, 22.[1] Plaintiff's Complaint alleges constitutional and other violations against all Defendants for deliberate medical indifference in violation of the United States Constitution. ECF No. 1 at 5-7. Specifically, Plaintiff claims that he has experienced "severe pain and suffering in his skull from a brain scar shearing tissue damages to the frontal part of his head since Dec. 12, 1996." *Id.* Plaintiff states that it has become difficult to sleep, chew food, and that he has experienced "dizziness, chest pain and black out spells [] and cardiac problems with difficult breathing." *Id.* at 5-10. Plaintiff asserts that he made Defendants aware of these problems on multiple occasions between August of 2012 and January of 2013, to no avail. *Id.*

---

[1] In his First Amended Complaint, Plaintiff added the following Defendants to this case: Alicia Jones, RN; Nurse Ms. Spallden, RN; Mr. Officer Corley; Mr. Officer Washington; Mr. Officer Smart; Sgt. Creech; Corporal Hughes; Ms. Officer Aldrich; Warden John M. Pate; A/W Newton; Major Worrick; Ms. Cindy Sanders; John H. Carmichael; Lt. Bishop; Sgt. Gilbert; Ms. Pam Smith; and IGC Ann Hallman. ECF No. 7. Later, in his Second Amended Complaint, Plaintiff added Sgt. Deloach and Lt. Morrison as Defendants and maintained that they also deliberately deprived Plaintiff of his medical needs. ECF No. 22. The bases for the majority of these later amendments were facts that took place in March of 2013. *See* ECF Nos. 7, 22. In a Report and Recommendation, adopted by the District Court (*see* ECF No. 44), the undersigned recommended that several defendants added by amendment be summarily dismissed "[a]s it is clear from the face of the pleadings that Plaintiff filed his claims alleging the denial of medical care in March 2013 prematurely, before he exhausted the prison's administrative remedy process. . . ." ECF No. 29 at 6. In the same Report and Recommendation, the undersigned recommended that Plaintiff's claims against Pam Smith and Ann Hallman be summarily dismissed because Plaintiff has no constitutional right to a grievance procedure and recommended that SCDC be dismissed as a defendant. *See* ECF No. 29. Therefore, for purposes of this Report and Recommendation, only Plaintiff's claims for his alleged 2012 denial of medical care are relevant and will be addressed herein.

Plaintiff also contends that Defendants Byars, Wresicics, and Moore failed to supervise and train their subordinates. *Id.* at 7. Plaintiff also maintains that Byars, Wresicics, and Moore failed to adequately investigate the incident and punish responsible state actors. *Id.* at 13. Plaintiff maintains that his maltreatment is the result of a policy or custom of the governmental entity. *Id.* at 10. Finally, Plaintiff claims that John H. Carmichael Jr., an SCDC Director/Supervisor of Medical Services, was deliberately indifferent to Plaintiff's medical needs since at least December of 2012. ECF No. 7 at 8. Against the Defendants in his first Complaint, Plaintiff requests $2,000,000 in compensatory damages against Defendants Bryne, McRee, Moore, Wresicics, Andrews, and Derrick; $10,000,000 in compensatory damages against Defendant Byars; $150,000 in punitive damages against each Defendant; and a jury trial. ECF No. 1 at 16-18. Plaintiff requests $500,000 in compensatory damages and $200,000 in punitive damages against Defendant Carmichael, the only remaining Defendant from Plaintiff's Amended Complaint.[2] ECF No. 7 at 14. Plaintiff indicates that the issues presented have been exhausted through the prison's internal grievance process and the Administrative Law Court. ECF No. 1 at 2-4.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.,* 901

---

[2] *See infra* Section F. regarding Plaintiff's Motion to Dismiss.

F.2d 387, 391 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

   III.   Analysis

      A.  Deliberate Indifference to Medical Needs

Defendants contend that they are entitled to summary judgment on Plaintiff's medical indifference claim because Plaintiff has failed to provide expert testimony or affidavits that show his medical treatment was in any way insufficient or outside of the recognized standard of care. ECF No. 127 at 5. Further, they contend that even if Plaintiff could provide any of this evidence, he would also have to show that this type of treatment rose to the level of being an accepted and

4

recognized right under the Constitution. *Id.* at 6-7. Defendants allege that Plaintiff was seen many times for his ailments from early 2011 until the present, and the medical records show that Plaintiff was treated properly by SCDC medical. *Id.* at 7. Defendants argue that even though the medical staff is unable to alleviate all of Plaintiff's subjective symptoms and complaints, that does not mean they were deliberately indifferent to the inmate's serious medical conditions or that the medical staff chose not to treat Plaintiff's medical conditions. *Id.* Moreover, Defendants maintain that Plaintiff's repeated evaluations, testing, and prescription medications provided by SCDC medical staff satisfy the constitutional standard. *Id.*

Plaintiff responds by mainly reiterating the allegations in his Complaint. ECF No. 131. Plaintiff admits to being seen "many times for his extreme pain from early 2011 until the present, [but asserts that] the medical staff subjectively failed to treat or alleviate his extreme pain and suffering." *Id.* at 11. Plaintiff further argues that Defendants knew of and disregarded an excessive risk to him. *Id.* at 12. Though Plaintiff does not specifically explain these alleged risks, he claims to experience "complications of breathing[,] cardiac problems, dizziness[,] chest pain[,] vomiting[, and] periodic blackout spells." *Id.* at 5.

To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 832-35 (1994); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846.  An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate

5

"[deliberate indifference] . . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The undersigned finds that Plaintiff has not offered any evidence that would support a finding that Defendants intentionally or recklessly disregarded Plaintiff's medical needs or delayed Plaintiff's access to medical care. Further, the record before the court reveals that Plaintiff was treated for various chronic complaints, including his neurocardiogenic syncope, on multiple occasions. ECF No. 127-3 at 2. Dr. Thomas Byrne avers that he was aware of Plaintiff's neurocardiogenic syncope diagnosis. *Id.* However, after reviewing Plaintiff's tests and medical records, Dr. Byrne opines that Plaintiff's condition is not life threatening, though it can be if an individual experiences syncope while driving or swimming. *Id.* The evidence shows that Plaintiff had an MRI on July 22, 2011 and skull x-rays on February 8, 2012, and both appeared "normal." *Id.* Additionally, Plaintiff had multiple cardio workups since his incarceration that have all come back as "normal." *Id.* Plaintiff had normal EKGs on November 10, 2010, and December 7, 2012. On February 15, 2012, Plaintiff had an echocardiogram, and the "test indicated that it was a normal cardiogram with normal ventricular and valvular function." *Id.*

Although Plaintiff may disagree with the amount of treatment he received or may object to the medical staff's attitude towards him, such allegations do not constitute a constitutional deprivation. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary).  Though Plaintiff admits to seeing medical staff "many times" for his "extreme pain," he argues that the "medical staff subjectively failed to treat or alleviate his extreme pain and suffering." ECF No. 131 at 11. Plaintiff's admission indicates that his claim is more akin to a claim of neglect or malpractice and does not meet the standard for a plausible claim under § 1983.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).  As the *Wright* court articulated:

> Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

*Id.* (internal citations omitted).  Here, at best, Plaintiff's claim amounts to medical malpractice and is not a proper § 1983 claim. *See id.* The undersigned finds that the record does not contain facts that demonstrate Defendants knew of and disregarded Plaintiff's serious medical needs. Rather, the record demonstrates that SCDC medical personnel were aware of Plaintiff's medical condition and have concluded it is not life threatening. Thus, Plaintiff has failed to demonstrate he is at risk based on his medical state. Therefore, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claim.

### B. Respondeat Superior/Failure to Supervise/Failure to Investigate

#### 1. Respondeat Superior/Failure to Supervise

7

Defendants contend summary judgment is proper because Plaintiff has failed to allege any direct link between an official policy of the SCDC and the alleged violation of his constitutional rights. ECF No. 127 at 12. Rather, Defendants argue that Plaintiff has named Defendants based on their statuses as directors and wardens and not on any actual interactions with Plaintiff. *Id.* at 12-13. Regarding the failure to supervise claim, Plaintiff maintains that Defendants had actual or constructive knowledge that subordinates were engaged in conduct that posed an unreasonable risk to Plaintiff, that the supervisory response was inadequate, and that there was an affirmative or causal link between the supervisory inaction and the injury suffered by Plaintiff. ECF No. 131 at 17-21.

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier*, 896 F.2d at 854. To successfully pursue such a theory, Plaintiff must demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practices. *Id.*; *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

In his Complaint, Plaintiff contends that Defendants Wresicics, Moore, and Byars "neglected their individual duty to train to supervise and control their subordinates. . . ." ECF No. 1 at 7. Though Plaintiff's Complaint alleges that all Defendants acted with deliberate indifference to his medical needs, it alleges that only Defendants Wresicics, Moore, and Byars had supervisory roles at SCDC. Plaintiff failed to show facts that establish any of the Defendants acted with medical indifference. Further, as established by the record, Plaintiff's medical needs

8

were addressed by SCDC medical personnel, although Plaintiff disagrees with the treatment he received. Therefore, the undersigned finds that Plaintiff has failed to establish a causal link between any action or inaction on the part of the treating medical personnel and their supervisors. To the extent Plaintiff attempts to rely on the doctrine of supervisory liability to hold Defendants liable on his medical indifference claims, the undersigned recommends that summary judgment be granted to Defendants Wresicics, Moore, and Byars as to this claim.

### 2. Failure to Investigate

Under a section of his Complaint entitled "policy custom," Plaintiff argues that Defendants Wresicics, Moore, and Byars "failed to investigate this incident and punish those responsible state actors who acted under the color of state law in effect ratifying their actions, in unreasonably delaying plaintiff access to appropriate treatment." ECF No. 1 at 13. Liberally construed, the "policy custom" section of Plaintiff's Complaint appears to allege that Defendants violated Plaintiff's constitutional rights by failing to properly address his grievances regarding the alleged denial of medical care. It is well established that prison inmates have no constitutionally protected right to a grievance procedure. *See e.g., Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011) (holding prisoners do not have a constitutional right of access to the grievance process); *see also Blagman v. White*, 112 F. Supp. 2d 534, 542-43 (E.D. Va. 2000) (holding the lack of a grievance process causes no injury to their constitutional right of access to the courts); *Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) ("[A] prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). As Plaintiff's allegations of failure to investigate against Defendants Wresicics, Moore,

and Byars fail to state a cognizable claim under 42 U.S.C. § 1983, the undersigned recommends that summary judgment be granted to Defendants on this claim.

### C. Retaliation

Defendants maintain that Plaintiff alleged that the Defendants' deliberate indifference to his medical needs is a result of retaliation against him for his filing grievances against the Defendants. ECF No. 127 at 15-17. The undersigned does not recommend that the court address retaliation in an order because it was not made a cause of action in any of Plaintiff's pleadings, and Plaintiff does not address retaliation in his Response to Defendants' Motion for Summary Judgment. However, to the extent Plaintiff's pleadings are liberally construed to include a cause of action for retaliation, such claim is not supported by the facts in the record.

"To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. *ACLU v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993). Claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d at 74).

Here, Plaintiff has failed to provide any evidence to establish that Defendants intentionally denied him medical treatment because Plaintiff filed grievances against Defendants. Accordingly, the undersigned recommends that summary judgment be granted on Plaintiff's retaliation claims.

D.  Qualified Immunity

Defendants contend that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 127-1 at 17-18.   The Supreme Court, in *Harlow v. Fitzgerald,* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. 457 U.S. 800 (1982). That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow*, 457 U.S. at 818. When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009).  The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236.  In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition."  *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004) (internal citation omitted). "If the right was not clearly established in the specific context of the case—that  is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id*. at 301-02 (citations and internal quotation omitted).

Plaintiff maintains that Defendants acted with deliberate indifference and are not entitled to qualified immunity. ECF No. 131 at 22-24. The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional

11

rights of Plaintiff of which they were aware in the exercise of their respective professional judgments. Thus, if the district judge finds that a constitutional violation occurred, despite recommendations otherwise, the undersigned recommends Defendants be granted qualified immunity.

### E. Sovereign Immunity

As a final argument, Defendants maintain: "To the extent Plaintiff sued the SCDC and its employees in their official capacities, they are entitled to sovereign immunity as arms of the state under the Eleventh Amendment." ECF No. 127-1 at 18. The undersigned agrees. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendants are agents or employees of the State of South Carolina when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendants, in their official capacities,

are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

    F.  Plaintiff's Motion to Dismiss

In his Motion to Dismiss, Plaintiff names nine individuals he wants to dismiss from the case: Warden John Pate, A/W Newton, A/W Williams, Major Worrick, Ms. Sanders, Lt. Combs, Ms. Cohen, Caseworker Archie, and Ms. Margrette McQueen. ECF No. 163. Of these individuals only Pate, Newton, Worrick, and Sanders are actually parties to this action. Defendants consent to their dismissal with prejudice.

    IV.  Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 127, be granted and that this case be dismissed. If the court accepts this recommendation, Plaintiff's pending Motion to Dismiss, ECF No. 163, will be moot.

IT IS SO RECOMMENDED.

May 30, 2014                                                                             Kaymani D. West
Florence, South Carolina                                       United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**